IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  15-cv-00698-REB-MJW

IOWA NETWORK SERVICES INC., *an Iowa corporation*,

Plaintiff,

v.

LEVEL 3 COMMUNICATIONS LLC, *a Delaware limited liability company*,
GLOBAL CROSSING TELECOMMUNICATIONS INC., *a Michigan corporation*, and
WILTEL COMMUNICATIONS LLC, *a Delaware limited liability company*,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' PARTIAL MOTION TO DISMISS (Docket No. 20)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's amended complaint in part, and District Judge Robert E. Blackburn referred the motion to the undersigned. (Docket Nos. 9, 20, & 21.)  The Court has reviewed the parties' filings (Docket Nos. 20, 26, & 28), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court recommends that the motion be granted in part and denied in part.

## Legal Standards

"'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

2

alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999)). "In doing so, all facts alleged in the complaint are taken as true and all reasonable inferences are indulged in favor of the plaintiffs." *Id.* "To survive a motion to dismiss, a complaint must allege facts sufficient to make a claim for relief facially plausible." *Petrella v. Brownback*, 787 F.3d 1242, 1268 (10th Cir. 2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "If an issue of law precludes relief, dismissal is appropriate." *Id.* (citing *Neitzke v. Williams,* 490 U.S. 319, 326 (1989)).

## **The Amended Complaint**

Plaintiff and Defendants are telecommunications companies. (Docket No. 9 ¶¶ 2, 9, 11.) Defendants provide long-distance service; Plaintiff provides long-distance carriers with access to over 140 local exchanges in several states. (*Id.* ¶¶ 10, 12–13.) Since at least 2009, Plaintiff's network has connected its network of local exchanges to Defendants, for both incoming and outgoing calls. (*Id.* ¶¶ 14–28.) Plaintiff continues to provide the service, but Defendants have stopped paying the full amounts invoiced for that service. (*Id.* ¶¶ 18, 29–45.)

Plaintiff sues on three legal theories. First, Plaintiff asserts that Defendants are obligated to pay the full amounts due under the applicable tariff on file with the Federal Communications Commission. (*Id.* ¶¶ 55–68.) Second, Plaintiff asserts that Defendants have an express contract under federal common law, requiring Defendants to pay the tariff rate, and Defendants are in breach of that contract. (*Id.* ¶¶ 69–84.)

3

Finally, Plaintiff asserts that Defendants are in breach of state tariffs as well. (*Id.* ¶¶ 85–97.) For relief, Plaintiff asks for direct and consequential damages, attorneys' fees, punitive damages, and an injunction against future failure to pay. (*Id.* pp. 19–21.)

## Discussion

Defendants move to dismiss in part, arguing (1) that Plaintiff's first claim must be dismissed insofar as it is brought for violation of the Communications Act, 47 U.S.C. § 151 *et seq.*, rather than as a tariff collection action; (2) that Plaintiff's second claim is preempted by the filed tariff; (3) that Plaintiff's damages are limited by a two-year statute of limitations; and (4) that none of Plaintiff's theories allow punitive damages.

### I.    Count I

Defendants do not seek to dismiss Count I in its entirety. Rather, Defendants draw a distinction between (1) breach of the federal tariff, and (2) violation of the Communications Act. Defendants argue that there is no cause of action for Plaintiff to enforce the Communications Act against Defendants, and therefore Count I must be dismissed insofar as it claims a violation of the Communications Act.

The Court recommends that the motion be denied as to Count I. The count is titled as "Breach of Federal Tariff," not "Breach of Communications Act" (Docket No. 9, p. 12), and it alleges that Defendants have breached the tariff (*id.* ¶ 63). At no point does Plaintiff aver that Defendants have breached the Communications Act. (*See id.* ¶¶ 66–68.) To be sure, Plaintiff refers to the sections of the Communications Act that create Defendants' duty to honor the filed tariff. (*Id.* ¶ 60.) But the cause of action for breach of tariff is a federal common law remedy premised upon the Communications

Act, *Ivy Broad. Co. v. Am. Tel. & Tel. Co.*, 391 F.2d 486, 491 (2d Cir. 1968), and there is therefore nothing strange about referring to the Communications Act while pleading the cause of action. Defendants do not dispute that an action can be brought to enforce the tariff; Plaintiff has pleaded an action to enforce the tariff; there is nothing to dismiss.

## II.    Claim II

Defendants further argue that Plaintiff cannot maintain a breach-of-contract claim in the alternative to the breach-of-tariff claim—in other words, that the tariff is the only possible source of liability in this case.

The Court recommends that the motion be granted as to Count II. The question is controlled by *American Telephone & Telegraph Co. v. Central Office Telephone, Inc.* ("*Central Office*"), 524 U.S. 214 (1998). The issue there was the scope of the "filed rate doctrine," which holds that a duly filed tariff becomes the only lawful rate that can be charged by a common carrier. *Id.* at 221–22. The Ninth Circuit had held that although side-agreements concerning other rates were preempted by the doctrine, side-agreements concerning other *services* were not. *Id.* at 223. The Supreme Court disagreed, explaining that such a distinction would be too easy to manipulate:

> While the filed rate doctrine may seem harsh in some circumstances, its strict application is necessary to prevent carriers from intentionally misquoting rates to shippers as a means of offering them rebates or discounts, the very evil the filing requirement seeks to prevent. Regardless of the carrier's motive—whether it seeks to benefit or harm a particular customer—the policy of nondiscriminatory rates is violated when similarly situated customers pay different rates for the same services. It is that antidiscriminatory policy which lies at the heart of the common-carrier section of the Communications Act.
>
> The Ninth Circuit thought the filed rate doctrine inapplicable because this case does not involve rates or ratesetting, but rather involves

5

> the provisioning of services and billing. Rates, however, do not exist in isolation. They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa. If discrimination in charges does not include non-price features, then the carrier could defeat the broad purpose of the statute by the simple expedient of providing an additional benefit at no additional charge. An unreasonable discrimination in charges, that is, can come in the form of a lower price for an equivalent service or in the form of an enhanced service for an equivalent price. The Communications Act recognizes this when it requires the filed tariff to show not only "charges," but also "the classifications, practices, and regulations affecting such charges," 47 U.S.C. § 203(a); and when it makes it unlawful to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges" except those set forth in the tariff, § 203(c).

*Id.* at 223–24 (internal case citations, quotation marks, and alterations omitted). Thus, whether the question is the tariff's rate, or the services covered by that rate, the tariff controls. "'The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.'" *Id.* at 227 (quoting *Keogh v. Chi. & Nw. R. Co.,* 260 U.S. 156, 163 (1922).

To avoid the result dictated by this reasoning, Plaintiff argues that the filed-rate doctrine bars contract claims only if the purported contract conflicts with the tariff. For support, Plaintiff cites Chief Justice Rehnquist's concurring opinion from *Central Office*:

> . . . The filed-rate doctrine furthers [the antidiscrimination] policy by disallowing suits brought to enforce agreements to provide services on terms different from those listed in the tariff. This ensures that the tariff governs the terms by which the common carrier provides those services to its customers.
>
> In order for the filed rate doctrine to serve its purpose, therefore, it need pre-empt only those suits that seek to alter the terms and conditions provided for in the tariff.

6

*Id.* at 229 (Rehnquist, C.J., concurring).  But Plaintiff has taken this language out of context.  The Chief Justice went on to elaborate, a few paragraphs later:

> The tariff does not govern [] the entirety of the relationship between the common carrier and its customers.  For example, it does not affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations.  The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff.  It does not serve as a shield against all actions based in state law.

*Id.*, at 229–31 (Rehnquist, C.J., concurring).  Placed in context, Chief Justice Rehnquist's concurrence does not help Plaintiff.  The breach-of-contract claim in this case concerns the terms and conditions by which a common carrier (Plaintiff) provides its customers (Defendants) with the type of services covered by the tariff; it is exactly the sort of claim that does *not* survive the filed-rate doctrine, as described by Chief Justice Rehnquist.

Count II is preempted by the filed-rate doctrine.  The Court recommends that it be dismissed.

### III.     Statute of Limitations

Plaintiff's Amended Complaint does not state the amount of damages sought (*see* Docket No. 9, pp. 12–20), and the Scheduling Order in this case similarly does not take any specific position (*see* Docket No. 25, pp. 5–6).  Nonetheless, the Amended Complaint refers to breaches as far back as 2009.  (Docket No. 9 ¶ 18.)  Defendants argue that any damages beyond two years are time-barred.

The Court recommends that the motion be granted as to the statute of limitations.

The Communications Act provides a two-year period of limitations:

> (a) Recovery of charges by carrier
>
> All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after.
>
> (b) Recovery of damages
>
> All complaints against carriers for the recovery of damages not based on overcharges shall be filed . . . within two years from the time the cause of action accrues, and not after, subject to subsection (d) of this section.

47 U.S.C. § 415(a), (b). Plaintiff concedes that its tariff claim is subject to the two-year statute of limitations (*see* Docket No. 26, p. 12 n.8), but argues that its contract claim is subject to a ten-year statute of limitations under Iowa state law. Because the Court recommends that the contract claim (*i.e.*, Count II) be dismissed on other grounds, the statute of limitations for that claim has no further relevance.

A two-year limitations period applies to Count I. Plaintiff makes no argument as to any continuing-breach theory. Accordingly, the Court recommends that Count I be dismissed insofar as it seeks damages predating April 1, 2013 (*i.e.*, two years before the original complaint in this case was filed).[1]

---

[1] Defendants make no argument—other than broad, ambiguous statements about "any claims that remain in the case"—regarding the statute of limitations for Count III, breach of *state* tariffs. For all appearances, Defendants' argument relates only to Plaintiff's federal tariff. (*See, e.g.*, Docket No. 28, p.9 (in conclusion, stating "the two year statute of limitations . . . is applicable to INS's claim for enforcement of its federal tariff.").) The Court therefore declines to address the issue.

## IV.  Punitive Damages

Finally, Defendants argue that none of Plaintiff's causes of action make punitive damages available.  Plaintiff disputes this, arguing that a breach-of-tariff claim is akin to a negligence-per-se claim based on a statutory violation—and thus, as a species of tort, can support punitive damages.

The Court recommends that the motion be granted as to punitive damages.  It is true that courts routinely say, for example, that "tariffs are the law, not mere contracts." *MCI Telecomms. Corp. v. Garden State Inv. Corp.,* 981 F.2d 385, 387 (8th Cir. 1992). But this does not mean that an action for breach of the tariff sounds in tort.  Rather, the Court must look to the source of the duties allegedly breached.  Here, the rights and duties between the parties arise from the tariff, itself a contract governing the sale of services; that the tariff carries the force of law does not change that fact.  Further, in *Central Office*, *supra*, the Supreme Court pervasively described the action as one sounding in contract.  The Court's majority opinion, Chief Justice Rehnquist's concurring opinion, and Justice Stevens's dissenting opinion all agreed that the tariff preempted state contract claims; the justices also all agreed that the tariff preempted tort claims that were "wholly derivative" of the contract.  The only dispute between the justices was Justice Stevens's conclusion that the tort claims at issue were *not* wholly derivative of the contract.  *Central Office*, 524 U.S. at 231 (Stevens, J., dissenting).  This discussion would make little sense if the action sounded in tort.

Most other courts describe the action as a type of contract claim.  *See, e.g.*, *MCI Worldcom Commc'ns, Inc. v. LD Wholesale, Inc.,* 161 F. App'x 31, 32 (2d Cir. 2005)

9

(per curiam) (affirming finding that party was liable for breach of contract for violating terms of tariff filed with FCC); *Am. Tel. & Tel. Co. v. MCI Planners, Inc.,* 47 F.3d 427, 1995 WL 71348, *4 (5th Cir. 1995) (unpublished table decision) ("The F.C.C. tariff placed mandatory reciprocal obligations on both AT & T and Planners. This relationship has been found to give rise to a breach of contract claim."). And in an analogous context, at least one federal court has found that the breach-of-tariff action sounds in contract, not tort. *Wheeler v. Beard*, 2005 WL 1217191, at *9 (E.D. Pa. May 19, 2005) (breach of Pennsylvania state tariffs, filed with public utilities commission, sounds in contract). The Court concludes that a federal breach-of-tariff claim sounds in contract and not tort.

The parties agree that, absent an independent tort, no applicable state law allows punitive or exemplary damages on a contract claim. *See, e.g.*, *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900, 902–04 (Colo. 1987) (collecting cases from various states). The only alleged breach here is Defendants' breach of their duty to pay the contracted rate. The Amended Complaint pleads no tort claim, and punitive damages are not available.

### **Recommendation**

For the foregoing reasons, the undersigned RECOMMENDS that Defendants' Partial Motion to Dismiss (Docket No. 20) be GRANTED IN PART and DENIED IN PART, as follows:

- That Count II of the Amended Complaint be DISMISSED in full;

10

- That Count I of the Amended Complaint be DISMISSED insofar as it seeks damages predating April 1, 2013;

- That Counts I and III be DISMISSED insofar as they seek punitive damages; and

- That Defendant's motion (Docket No. 20) be DENIED in all other respects.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated:  July 21, 2015  */s/ Michael J. Watanabe*
        Denver, Colorado  Michael J. Watanabe
                                United States Magistrate Judge