**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-00698-REB-MJW

IOWA NETWORK SERVICES INC., an Iowa corporation,

 Plaintiff,

v.

LEVEL 3 COMMUNICATIONS LLC, a Delaware limited liability company,
GLOBAL CROSSING TELECOMMUNICATIONS INC., a Michigan corporation, and
WILTEL COMMUNICATIONS LLC, a Delaware limited liability company,

 Defendants.

---

**ORDER OVERRULING OBJECTIONS AND ADOPTING
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Blackburn, J.**

The matters before me are (1) **Defendants' Partial Motion To Dismiss** [#20][1] filed June 15, 2015; and (2) the **Report and Recommendation on Defendants' Partial Motion To Dismiss (Docket No. 20)** [#29] filed June 23, 2015. The plaintiff filed objections [#30] to the recommendation as well as two notices [#32 & #44] of supplemental authority. The defendants filed a response [#31] to the objections of the plaintiff and a response [#33] to the first notice of supplemental authority. I overrule the objections, approve and adopt the recommendation, and grant the related motion to dismiss in part.

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the

---

[1] "[#20]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

recommendation to which the plaintiff objects. I have considered carefully the recommendation, objections, and applicable case law, as well as the arguments raised and authorities cited by the parties. The motion at issue is a motion to dismiss for failure to state a claim. Thus, the facts alleged by the plaintiff in its complaint [#9] are assumed to be true.

## I.  FACTS & CLAIMS ALLEGED

The plaintiff, Iowa Network Services, Inc. (INS), and the defendants, Level 3 Communications, LLC, Global Crossing Telecommunications, Inc., and Wiltel Communications, LLC, are telecommunications companies. The defendants provide long-distance service. INS provides long-distance carriers, like the defendants, with access to over 140 local exchanges in several states. Since at least 2009, INS has connected its network of local exchanges to the networks of the defendants, which permits the defendants to sell telecommunications services to their customers. INS continues to provide service to the defendants, but alleges the defendants have stopped paying the full amounts invoiced for the services of INS.

According to the complaint, "(b)eginning with INS' August 2009 invoice to Level 3 (for CEA service provided in July, 2009), Level 3 has withheld payment of some amounts billed by INS for CEA service." *Complaint* [#9], ¶ 18. INS makes similar allegations concerning the other two defendants. *Id*. Level 3 says it has withheld payment for some amounts billed by INS for CEA service based on the belief of Level 3 that some of the charges assessed by INS "were not legitimate charges for services related to legitimate call traffic, but instead were for call traffic resulting from a 'traffic pumping,' 'access stimulation,' 'mileage pumping' or similar scheme that has been recognized as unlawful by the FCC and numerous courts." *Motion to strike* [#40], p. 2.

2

In its complaint [#9], INS asserts three claims.  First, INS alleges the defendants are obligated to pay the full amounts due for the services of INS under the applicable tariff on file with the Federal Communications Commission.  Second, INS alleges a claim for tortious breach of contract.  According to INS, the defendants "have tortiously breached their contracts with INS by willfully and wrongfully refusing to fully pay the CEA tariff rates for the CEA service that Defendants order and that INS has provided to Defendants."  *Complaint* [#9], p. 16.  INS alleges that federal common law and the contracts between INS and the defendants, "which incorporate[ ] the terms of the CEA tariffs, required Defendants to pay damages (direct, consequential, and punitive), attorneys' fees, and court costs incurred by INS due to Defendants' beach of the contract with INS."  *Complaint* [#9], ¶ 80.  Third, INS alleges a claim for breach of applicable state tariffs.

## II. RECOMMENDATION

### A. Count I

The defendants contend Count I must be dismissed to the extent it improperly asserts a claim for violation of the Communications Act, 47 U.S.C. § 151, *et seq*., rather than a claim for collection of amounts due under the terms of the applicable tariff.  The magistrate judge recommends that this aspect of the motion to dismiss be denied because Count I is titled "Breach of Federal Tariff" and does not include an allegation that the defendants have violated the Communications Act.  The magistrate judge notes that INS refers in its complaint to the sections of the Communications Act that create the duty of the defendants to honor the applicable tariff.  I agree with the magistrate judge that those references are proper and do transform Count I into a claim under the Communications Act rather than a proper claim to enforce the applicable tariff.

B.  Count II

The defendants contend INS may not maintain a claim of tortious breach of contract as an alternative claim to the breach of tariff claim asserted in Count I.  The defendants contend the filed rate doctrine bars this alternative claim.

As detailed by the magistrate judge, the filed rate doctrine

> exists to protect the antidiscriminatory policy which lies at the heart of the common-carrier section of th Communications Act.  Central to that antidiscriminatory policy is the notion that all purchasers of services covered by the tariff will pay the same rate.  The filed-rate doctrine furthers this policy by disallowing suits brought to enforce agreements to provide services on terms different from those listed in the tariff.  This ensures that the tariff governs the terms by which the common carrier provides those services to its customers.
>
> *  *  *  *
>
> The tariff does not govern, however, the entirety of the relationship between the common carrier and its customers. For example, it does not affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations. The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff.

***American Tel. and Tel. Co. v. Central Office Telephone, Inc.***, 524 U.S. 214, 230 (1998) (internal quotation and citation omitted).  "In order for the filed rate doctrine to serve its purpose, . . . it need pre-empt only those suits that seek to alter the terms and conditions provided for in the tariff."  ***Id***. at 229.

The allegations of INS in paragraphs 79 and 80 of the complaint [#9], quoted above, show that Claim II is based explicitly on the terms of the tariffs applicable to the services provided by INS to the defendants.  In Claim II, INS seeks to enforce the terms of the tariff rather than some contract right independent of and not controlled by the

4

tariff. In Claim I, INS also seeks to enforce the terms of the tariff. INS contends its contract claim is permissible because the claim does not seek to deviate from the terms of the tariff. Rather, INS says it seeks to enforce the terms of the tariff in its contract claim. Still, under the filed rate doctrine, the tariffs "are the exclusive source of the terms and conditions by which" INS provides the services in question to the defendants. *Id*. at 230. Under the filed rate doctrine, an action to enforce the terms of the tariff, as opposed to an action to enforce a contract which parrots those terms, is the exclusive cause of action permitted to enforce the tariff. I agree with the magistrate judge that INS may enforce the terms and conditions of the applicable tariff only via a claim to enforce the tariff and to collect amounts due under the terms of the tariff. The alternative tortious breach of contract claim is barred by the filed rate doctrine.

## C.  Statute of Limitations

The complaint [#9] alleges underpayment by the defendants as far back as 2009. The defendants argue that any claim for damages incurred more than two years before the complaint was filed are time barred. The defendants rely on 47 U.S.C. § 415, which provides:

> (a) Recovery of charges by carrier
>
> All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after.
>
> (b) Recovery of damages
>
> All complaints against carriers for the recovery of damages not based on overcharges shall be filed . . . within two years from the time the cause of action accrues, and not after, subject to subsection (d) of this section.

Section 415 uses the term "carriers," a specialized term defined in the Communications Act. Under 47 U.S.C. § 153(11), the "term 'common carrier' or 'carrier' means any

5

person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy . . ." The defendants fall within this definition. Further, INS alleges in the complaint that the defendants are common carriers. *Complaint* [#9], ¶ 47.

INS argues that § 415(b) does not apply to its claims because, in this case, the defendants are customers rather than carriers. The defendants are customers of INS, but they are also carriers as defined in § 153. Thus, § 415(b) is applicable to the federal tariff claim of INS. Whether one applies § 415(a) or (b), a two year statute of limitations applies to the federal tariff claim of INS. The original complaint in this case [#1] was filed on April 3, 2015. Applying the two year period of limitations, any claim for payment by INS which accrued before April 1, 2013, is barred by the applicable statute of limitations.

For the first time in its objections [#30], INS raises two new issues related to the statute of limitations. Generally, theories raised for the first time in objections to a recommendation of a magistrate judge are deemed waived. **Marshall v. Chater**, 75 F.3d 1421, 1426 (10th Cir. 1996). On this procedural ground, I overrule the objections of INS to the extent INS raises new theories in their objection.

Substantively, the new theories are not valid. First, INS contends that under a continuing breach theory "the two-year limitations period does not apply." *Objections* [#30], p. 10. In the case cited by INS in support of this contention, the court concluded that under § 415(b) with a continuing violation, "the statute of limitations would begin with each day that the rule was violated." **In the Matter of AirTouch Cellular, Complainant**, 16 F.C.C.R. 13502, 13509 n. 24 (Federal Communications Commission 2001). Still, the Federal Communications Commission ruled that the complainant could

recover only for violations which occurred within two years of the date the complaint was filed. *Id*.

Second, INS contends the two year period of limitations should be extended by 90 days under § 415(d). I agree with the United States Court of Appeals for the Fifth Circuit about the application of the 90 day exception stated in § 415(d). "The exception permits an aggrieved party to initiate a complaint against a carrier within ninety days after the day the carrier institutes an action to collect damages for 'the same service.'" ***Delta Communications Corp. v. F.C.C.***, 777 F.2d 226, 228 (5th Cir. 1985) (quoting 47 U.S.C. § 415(d)). In essence, § 415(d) creates a grace period for a counterclaim. INS is not asserting a counterclaim in this case.

### D.  Punitive Damages

The defendants seek dismissal of the claim for punitive damages asserted by INS. The defendants contend none of the validly alleged claims of INS makes punitive damages available. INS contends that its claim for breach of the tariff is akin to a negligence per se claim, because the tariff has the force of law. Violation of the tariff is akin to violation of a statute. Violation of a statute, INS contends, supports a negligence per se claim under state law and can support an award of punitive damages based on such a claim.

I agree with the magistrate judge that the claim for punitive damages must be dismissed to the extent it is not based on the tariff. In ***American Tel. and Tel. Co. v. Central Office Telephone, Inc.***, American Telephone and Telegraph Company (AT&T) provided long distance communications services to Central Office Telephone, Inc. (COT). COT re-sold long distance communications services to its customers. 524 U.S. 214, 216 (1998). The services were provided by the AT&T under the terms of a tariff.

COT filed suit against AT&T, claiming the services provided were not of the quality required by the tariff and other agreements between the parties. COT asserted a claim for tortious interference with contract, alleging that any intentional violation of AT&T's contractual duties constituted tortious interference with COT's relationship with its customers. *Id*. at 220.

The tortious interference claim of COT was pre-empted by the filed rate doctrine. *Id*. at 226 - 227. "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Id*. at 227 (internal quotation and citations omitted). If punitive damages are available to INS under the applicable tariff, INS may seek punitive damages on that basis. However, under the filed rate doctrine, INS may not assert a tort claim derivative from the tariff as a means to obtain a form of relief not available under the tariff.

### III. CONCLUSION & ORDERS

For the reasons detailed in the recommendation and as supplemented in this order, I find that the analysis and conclusions of the magistrate judge are correct. Thus, I overrule the objections of the plaintiff and approve and adopt the recommendation as an order of this court.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Report and Recommendation on Defendants' Partial Motion To Dismiss (Docket No. 20)** [#29] filed June 23, 2015, is approved and adopted as an order of this court;

2. That the **Defendants' Partial Motion To Dismiss** [#20] filed June 15, 2015, is granted in part;

3. That under Fed. R. Civ. P. 12(b)(6), Count II of the complaint [#9] is

8

dismissed;

      4.  That under Fed. R. Civ. P. 12(b)(6), Count I of the complaint [#9] is dismissed to the extent the plaintiff seeks damages on claims which accrued prior to April 1, 2013;

      5.  That under Fed. R. Civ. P. 12(b)(6), Counts I and III of the complaint [#9] are dismissed to the extent the plaintiff seeks punitive damages on any basis other than the terms of the applicable tariff;

      6.  That otherwise, the **Defendants' Partial Motion To Dismiss** [#20] filed June 15, 2015, is denied.

      Dated March 18, 2016, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge